IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL MALRY,     *

    Plaintiff,     *

   v.     *     Civil Action No. 8:17-cv-01590-PX

MONTGOMERY COUNTY     *
BOARD OF EDUCATION,
    *
    Defendant.

       ***

## MEMORANDUM OPINION

Pending in this employment discrimination case is Defendant Montgomery County Board of Education's ("BOE") motion for summary judgment. ECF No. 15. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court grants the BOE's motion.

### I. Overview

### A. Factual Background

Plaintiff Michael Malry ("Malry") is an African American and Hispanic man, born on October 27, 1954. ECF No. 1 ¶ 9, 41. The BOE hired Malry in 1996 to provide technology support at Seneca Valley High School (the "School"). ECF No. 17-10 at 5. Malry was promoted to his current position—Information Technology System Specialist Two in 2008. ECF No. 1 ¶ 106.

After his promotion, and after the School hired a new principal, Dennis Queen (ECF No. 17-10 at 5), Malry began behaving inappropriately toward students and staff. In August 2008, a teacher complained that Malry asked if she had a boyfriend, made "lewd" remarks, touched her arm and shoulder, and referred to another teacher as a "white bitch." ECF No. 17-1 at 1. When

School officials met with Malry, he denied the allegations and instead accused the teacher of being "forward and fast." ECF No. 17-2 at 1. The School counseled Malry in a written memorandum and directed that he avoid "behaviors toward this individual that might be construed as inappropriate behavior." ECF No. 17-2 at 2.

On January 8, 2009,[1] Malry showed a para-educator explicit photos of his private parts. According to the para-educator, this incident was preceded by years of Malry asking her on dates and for oral sex, commenting on her body, and discussing his purported sexual relationship with another woman at the School. ECF No. 17-6 at 1–2. School officials met with Malry about this incident, and again Malry retorted that the para-educator had made sexual advances on him. ECF No. 17-8. Malry also solicited another employee to lie on Malry's behalf to say that he (the employee) witnessed the para-educator making such advances on Malry. ECF No. 17-9. Again, in a written memorandum, Malry was reprimanded and the School forbade Malry from having any contact with the para-educator. ECF No. 17-8.

On February 10, 2009, the Montgomery County Public Schools' Office of Human Resources ("OHR") investigated Malry's unauthorized presence at the home of a female student. ECF No. 17-12. Malry was placed on administrative leave during the investigation. Ultimately, the School allowed Malry to return to work, after OHR found that Malry had been at the student's home in an effort to provide "crisis counseling." *Id.* In a written memorandum, OHR reminded Malry that his job as an IT Systems Specialist does not entail crisis counseling, and that in the future he must involve School administrators in any similar situations. *Id.*

On November 18, 2009, Malry, during a discussion with a teacher and two students, called the principal a racist "country bumpkin," insinuated the principal had improper relationships with female coworkers, and said younger female coworkers were more like maids

---

[1] The date is also listed as January 1, 2008. ECF No. 17-6 at 1.

than workers. ECF No. 17-16 at 2. Malry denied making these statements, and again OHR reprimanded him. ECF No. 17-17. Malry then went on sick leave for the balance of the school year. ECF No. 17-16 at 3.

On September 3, 2010, the School enrolled Malry in the Peer Assistance and Review Program to address several performance deficiencies, including his unwillingness to complete his job in a timely and effective manner and his disruptive, inappropriate behavior. ECF No. 17-19. This program is designed to address employment related deficiencies and improve employee performance. ECF No. 17-67 at 3. The participating employee is assigned a mentor and is given performance goals to attain. ECF No. 17-66 at 8. After an employee completes the program, a panel of school administrators and union members determine whether the employee should return to work or be recommended to human resources for dismissal. ECF No. 17-67 at 5.

Malry's professional growth consultant, Monique Riddick, determined that Malry met the competency requirements in performing his job and maintaining a positive demeanor. ECF No. 17-20 at 3, 6. Accordingly, the panel recommended that Malry keep his job. On July 1, 2011, Riddick became Malry's supervisor. ECF No. 17-67 at 6. This same year, the School hired a new principal, Dr. Marc Cohen. ECF No. 1 ¶ 11; ECF No. 17-66 at 3.

On February 16, 2012, Malry touched a religious garment worn on the head of a female student whose religion forbade such contact. ECF No. 17-26 at 2. The librarian who witnessed the incident asked Malry why he was "disrespecting [the student] like that." ECF No. 17-30 at 2. Malry did not deny touching the student, but he argued that the student had not been upset about it. However, Malry also admits that "[t]he day after the incident [the student] was scared to speak to [him]." *Id.*

On May 11, 2012, another student complained by email of several incidents involving

Malry, which "creeped [her] out." ECF No. 17-21. The student described standing with a friend who had been stretching. *Id.* Malry asked the student why she did not also perform the stretch. *Id.* The student responded that she was wearing a skirt, to which Malry replied, "so?" *Id.* Malry denied making these comments. ECF No. 17-29 at 1. The student also reported that Malry had told her to get her "big butt" off a table. ECF No. 17-21, 17-27. Malry admitted to reprimanding the student but maintained that his actions were appropriate. ECF No. 24-1 ¶ 76. Malry also had, on a separate occasion, lifted the same student's leg off the ground and struck the bottom of her shoe. ECF No. 17-21. The student reported that she believed Malry to be "joking" but that she nonetheless "felt uncomfortable." *Id.* Other students corroborated, either wholly or partially, each of these incidents (ECF Nos. 17-23, 17-24, 17-25) and security footage captured Malry lifting the student's leg. ECF No. 17-67 at 13. Malry initially admitted to lifting the student's leg but later denied that he touched her. ECF No. 17-27; ECF No. 17-65 at 24.

As a result of the above student complaints and after the School conducted an investigation, the School reprimanded Malry, directing him to limit his student interactions to only those directly associated with his job duties and "to refrain from touching students at all times." ECF No. 17-26 at 2. The School also warned Malry that "further instances of this type of behavior will be grounds for more severe disciplinary action, up to and including dismissal." *Id.* Malry filed a grievance over this reprimand, but after an administrative hearing, the reprimand was upheld. ECF No. 17-31, ECF No. 17-32 at 3.

On March 1, 2013, Malry reportedly remarked to co-worker that the co-worker should contact a former student to "play with that pussy." ECF No. 17-35 at 1. A security assistant overheard the conversation and reported a slightly different version in which Malry asked if another coworker would "let me taste that pussy." ECF No. 17-34 at 1. This conversation

occurred in the cafeteria where students often congregate, although no student was reportedly present. ECF No. 17-39 at 2. Malry denied using "the objectionable word cited in the two witness statements." *Id.* The School issued Malry another reprimand for using inappropriate sexually explicit language, and again warned him that further similar behavior may lead to his termination. The School noted that this was Malry's second reprimand for similar behavior within the past year. ECF No. 17-37 at 1. Malry filed a grievance over this reprimand (ECF No. 17-38). The School upheld the discipline but clarified that Malry had been talking about a former student, rather than a coworker. ECF No. 39 at 3 (grievance denied at step two); *see also* ECF No. 17-40 at 3 (grievance denied at step three). On May 28, 2013, Malry was directed to stay out of the cafeteria during the students' lunch period and again to limit his interactions with students. ECF No. 17-42 at 2.

Despite this series of increasingly disturbing and inappropriate interactions with students and staff, Riddick found that Malry met "all seven core competencies"[2] as reflected in his Spring 2013 employment evaluation. Riddick noted in deposition, however, that Malry needed to improve his knowledge of the job and professionalism. ECF No. 17-67 at 23. Riddick further explained that her evaluation reflected her desire to give Malry more time to address his shortcomings instead of referring him again to the performance improvement process, which may have resulted in his termination. *Id.* Malry then took another period of extended sick leave, returning to work on August 21, 2013. ECF No. 17-48 at 1.

Upon Malry's return to work, the cafeteria manager reported that Malry had been seen in the cafeteria socializing with female students on three or four occasions and had been hugging students. ECF No. 17-44 at 2. OHR conducted another investigation for, among other things,

---

[2] The seven core competencies are: commitment to students, knowledge of job, professionalism, interpersonal, communication, organization, and problem solving. ECF No. 17-46.

insubordination, and confirmed that Malry had been seen in the cafeteria during lunch on several occasions in April, May, and August. ECF No. 17-44; ECF No. 17-47 at 1. Most of these instances took place before he had been forbidden from entering the cafeteria during lunch, but all occurred after he had been told to limit his interactions with students. The School again directed Malry to not enter the cafeteria during lunch, to work only from his office, and to maintain a log of his work assignments. ECF No. 17-43 at 1, 3. Around this same time, a substitute employee also discovered a knife and an empty video camera box in Malry's office.[3] ECF No. 17-45. Although OHR could not conclude that the knife or camera box belonged to Malry, OHR nonetheless found that Malry had "clearly been insubordinate" for failing to limit interactions with students. ECF No. 17-48 at 3–4. As a sanction, Malry was suspended for three days without pay. ECF No. 17-49.

Undeterred, Malry once again was observed socializing with students without authorization, this time at a school luncheon on October 10, 2013. ECF No. 17-51 at 2. Although Malry contended that he had just been "passing through" to fix a technology problem nearby, he could not substantiate what specific technology problem he had to fix, and it was apparent that he could have reached his claimed destination through another route. ECF No. 17-62 at 2–3. The principal, who had been at the luncheon, witnessed Malry socializing with the students. ECF No. 17-52.

On November 13, 2013, Malry was referred to the performance improvement process for a second time, even though employees generally are given one opportunity to engage in this remedial process. ECF No. 17-55; ECF No. 17-67 at 23. A week later, Malry was seen driving a student in his personal vehicle. ECF No. 17-56. Montgomery County Public Schools' policy

---

[3] The School previously learned that Malry had installed a video camera in the computer room to videotape individuals without advance permission or authorization. ECF No. 17-13 (July 31, 2009).

6

prohibits staff from "transport[ing] a student in a personal vehicle without permission from a parent/guardian and a school administrator, and, if possible, arrang[ing] for a second adult to accompany the driver and the student." ECF No. 15-7 at 9. Although Malry argued that he had permission to drive the student, the student's guardian claimed not to know Malry nor to have given him any such permission. ECF No. 24-1 ¶ 67; ECF No. 17-62 at 1. Once again, OHR investigated this incident and the School placed Malry on administrative leave pending the outcome of the investigation. ECF No. 17-62 at 1; ECF No. 17-58 at 1–2.

On December 30, 2013, OHR concluded that Malry had, once again, violated the directive to limit interactions with students, both by driving the student to School and by socializing with students at the luncheon. ECF No. 17-62 at 3. As a result, on January 27, 2014, Malry was terminated for his "continuing acts of insubordination." ECF No. 17-63.

Also during Malry's tenure, personnel regularly complained that Malry did not fix technology issues in a timely manner (ECF No. 17-66 at 6; ECF No. 17-67 at 7);[4] made staff uncomfortable (ECF No. 17-67 at 10; ECF No. 17-67 at 14–15); disrupted classrooms by taking students out of class (ECF No. 17-5 at 1; ECF No. 17-1); was inaccessible through the radio walkie-talkie system (ECF No. 17-14; ECF No. 17-18);[5] and left his job early without following proper protocol. ECF No. 17-50 at 1.

In contrast, Malry contends the School mistreated him for years. Malry complains of negative evaluations (ECF No. 1 ¶ 36), groundless reprimands (*id.* ¶ 113), petty work assignments (*id.* ¶ 130), daily questions of whether he liked his job (*id.* ¶ 122), hostility of

---

[4] Riddick observed that, due to the discrepancy between Malry's and the other IT System Specialists' performances, "the other schools were not having the same kind of technology issues we were having." ECF No. 17-67 at 18.

[5] On April 28, 2010, Malry told the School that his radio was not working (ECF No. 17-18 at 1), but later admitted the radio was functioning properly. ECF No. 17-65 at 22.

7

supervisors (*id.* ¶ 115), threatened discipline (*id.* ¶ 127), restrictions on his school interactions and accessibility (*id.* ¶¶ 106–07, 121, 131), being spied on (*id.* ¶ 118), not being allowed to come in early or stay late (*id.* ¶ 129), being forced to stay late (*id.* ¶ 135), being denied medically supported leave (*id.* ¶¶ 23, 29), and losing his parking space (*id.* ¶ 132). Malry also complains that he was forced to use his cellphone for work purposes (*id.* ¶ 94), even though it appears that the School allowed Malry to use his cellphone because he disliked using his work radio. ECF No. 17-42 at 1.

Malry also contends that Riddick advised him to retire (ECF No. 1 ¶ 37), and that the previous principal intimated to Malry that his job is really meant "for a younger man." ECF No. 24-1 ¶ 18. Malry further avers that Riddick told him not to speak Spanish, despite Malry also agreeing that the School had used Malry to translate in Spanish. ECF No. 17-65 at 40, 43. Malry also alleges that the principal shouted at him, saying he was tired of Malry blaming Riddick for his problems. ECF No. 17-65 at 44.

Finally, Malry avers that his budget for School technology needs was unreasonably restricted. ECF No. 1 ¶ 133. In support, Malry contends that Michael Johnson, the School's Medial Services Technician, was given a larger budget than Malry.[6] Malry also contends that Johnson, who is white and 38 years old, told Malry that he had been permitted to make equipment purchases "[b]ecause I am white," which prompted laughter from other coworkers who were present during this exchange. ECF No. 24-1 ¶¶ 31–32.

**B. Procedural Background**

In February 2009, Malry filed his first Equal Employment Opportunity Commission

---

[6] Johnson's position at the School was materially different than Malry's. As a Media Services Technician, Johnson provided technical support for televisions, radios, and audiovisual equipment. ECF No. 29-1 at 10. In contrast, Malry's position as Information Technology Systems Specialist involved technical support for School computers, networks, servers, and printers. *Id.* at 5. The School also was awarded separate grant monies to upgrade the equipment for which Johnson was responsible. *Id.* at 14.

("EEOC") claim against the BOE, alleging race and age discrimination as well as retaliation. ECF No. 1 ¶ 13. After the EEOC issued Malry a right to sue letter, Malry pursued his claims in the United States District Court. *See Malry v. Montgomery Cty. Pub. Sch.*, No. 8:11-CV-00361-AW, 2013 WL 812020 (D. Md. Mar. 4, 2013). Although his case was dismissed as a sanction for "completely disregard[ing] the discovery process," the Court also noted that dismissal was warranted because Malry failed to state a claim. *Id.* at *2; ECF No. 17-10 at 3.

In 2012 and 2013, Malry continued to lodge complaints with OHR concerning what he viewed as discriminatory acts taken against him. ECF No. 1 ¶¶ 52, 53. Malry filed a second formal EEOC charge following his termination, alleging discrimination under Title VII of the Civil Rights Act, as well as the Age Discrimination in Employment Act ("ADEA"). ECF No. 17-64. After receiving a right to sue letter on these charges (ECF No. 1 ¶ 6), Malry filed the current Complaint. The BOE moved for summary judgment in its favor on all counts. ECF No. 15.

## II.     Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or

her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23)). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Analysis

#### A. Discrimination Claims

Malry alleges that the BOE discriminated against him in violation of Title VII and the ADEA arising from the same course of conduct surrounding his reprimands and termination. ECF No. 1 ¶¶ 36, 43. The Court separately addresses each statutory claim.

##### 1. Title VII

Title VII provides that it is unlawful "for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, where a plaintiff marshals no direct evidence of discrimination, the Court evaluates his claims using the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 541 (D. Md. 2015). With regard to alleged discriminatory discipline, a plaintiff first must establish a *prima facie* case of discrimination by demonstrating that (1) he is a member of a protected group; (2) the prohibited conduct in which he engaged was

10

comparable in seriousness to the misconduct of employees outside the protected group; and (3) the disciplinary measures enforced against him were more severe that those enforced against other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *Barnes v. ISG Sparrows Point, LLC*, No. BPG-10-2492, 2011 WL 4596058, at *7 (D. Md. Sept. 30, 2011). With regard to the *prima facie* case for discriminatory termination, a plaintiff must show "that (1) he is a member of a protected group; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside of the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

If Malry establishes his *prima facie* case, the burden shifts to the BOE to offer a legitimate, non-discriminatory reason for the adverse employment action. *See Langerman v. Thompson*, 155 F. Supp. 2d 490, 496 (D. Md. 2001). If the BOE provides such a reason, the burden then shifts back to Malry to raise a genuine dispute as to whether the BOE's proffered reason is mere pretext for discrimination. *See E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Although the framework "involves a shifting back and forth of the evidentiary burden, Malry, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of" the law. *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 841 (D. Md. 2004); *see also Moore v. Mukasey*, 305 F. App'x 111, 115 (4th Cir. 2008). "The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995); *see also Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 528 (W.D.N.C.

11

2015) ("[I]t is not the Court's province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for" the BOE's action) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)) (internal alterations omitted).

Assuming Malry can establish a *prima facie* case of discrimination, no evidence demonstrates that the BOE's adverse actions were pretextual. The evidence, viewed most favorably to Malry, demonstrates that the BOE disciplined him on several occasions for sexual harassment and other inappropriate behavior after conducting a thorough investigation and review. ECF No. 17-1; ECF No. 17-6; ECF No. 17-11; ECF No. 17-16; ECF No. 17-26; ECF No. 17-21; ECF No. 17-35; ECF No. 17-67 at 10, 14–15. In doing so, the School took measures no harsher than appropriate to address genuine and unrebutted employment concerns about Malry's behavior. ECF No. 17-26 at 2; ECF No. 17-42 at 2; ECF No. 17-43 at 3; ECF No. 17-49. Malry then repeatedly failed to adhere to School directives. ECF No. 17-44; ECF No. 17-52; ECF No. 17-61; ECF No. 17-18; ECF No. 17-50. Simply put, the evidence overwhelmingly demonstrates that he was disciplined and terminated for cause, and not on account of unlawful discrimination.

In response, Malry primarily contends that the discipline was unwarranted and therefore must be motivated by discrimination. Malry more particularly argues that his own disagreement with the BOE's prior discipline as well as Riddick's 2013 evaluation generates a sufficient factual question on whether the BOE discriminated against him. ECF No. 24-1; ECF No. 17-67 at 23. The Court disagrees. Malry engaged in a multi-year persistent pattern of inappropriate encounters with staff and students, many of which post-dated Riddick's evaluation. Thus, this single evaluation could in no way undermine the BOE's genuine good faith grounds to terminate him after he refused to follow the School's directives.

Further, Malry's own disagreement with the events that led to his termination does not alter the analysis. The evidence demonstrates that the BOE maintained a good faith, genuine belief in the need to discipline Malry for repeated serious impropriety. *Holland*, 487 F.3d at 215 ("Title VII endeavors to eliminate workplace discrimination, but the statute was not designed to strip employers of discretion when making legitimate, necessary personnel decisions . . . ."). Accordingly, even if, as Malry suggests, the BOE's decision was unwise, unfair, or even incorrect, it does not follow that the BOE took adverse action because of his race. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017) ("Whether the termination decision 'was wise, fair, or even correct' is immaterial.") (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

Malry also does not marshal any evidence that the School disciplined him differently or more harshly than similarly situated persons outside of his protected class. As to his singular comparator, Michael Johnson, Malry has not demonstrated that Johnson had engaged in similar misconduct compared to Malry, or any misconduct for that matter. Accordingly, no evidence exists that Johnson faced lesser sanction for similar instances of sexual harassment and poor job performance. Johnson is simply not a proper comparator. *See Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful.").

Similarly, Malry has failed to generate any evidence that the School exerted budget restrictions on him because of discriminatory animus. Again, Johnson in this respect is a false comparator. It is undisputed that Johnson occupied a distinctly different role as Media Specialist. ECF No. 24-1 ¶ 23; ECF No. 29-1 at 11; ECF No. 1 ¶ 7; ECF No. 29-1 at 5. It is also undisputed that that the BOE maintained different budgets for each division. *See* ECF No. 29-1

at 14. Consequently, Johnson's remark that he received more money for equipment than Malry because he is white is not evidence that *the BOE* discriminated against Malry. Rather, because each position entailed management of separate equipment with different budgetary criteria, Johnson's personal views simply cannot support a plausible inference that the BOE limited Malry's budget on account of race.

Likewise, as to Malry's termination, no record evidence leads to the plausible inference that he was terminated on account of his race. Instead, the evidence overwhelmingly demonstrates that Malry required constant and ever-increasing discipline for a pattern of sexual misconduct and other related behaviors that have no place in a school. ECF Nos. 17-1, 17-6, 17-11, 17-16, 17-26, 17-21, 17-35, 17-67 at 10, 14–15; *see also Franklin v. Gwinnet Cty. Public Sch.* 503 U.S. 60 (1992) (holding that monetary damages are available to redress sexual harassment of students under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88). The evidence also demonstrates that Malry refused to follow the School's legitimate directives, such as refraining from contact with students, staying out of the cafeteria, and creating a log of his work. ECF Nos. 17-44, 17-52, 17-61, 17-18, 17-50. Ultimately, and after repeated warning, the BOE terminated Malry for insubordination, a ground squarely supported by the evidence. *See* ECF No. 17-63. By contrast, Malry has generated no evidence that his termination was motivated by discrimination. *See Trent v. Constellation Energy Grp., Inc.*, No. CCB-08-1271, 2009 WL 2044130, at *4–6 (D. Md. July 8, 2009) (holding that an alleged pattern of sexual misconduct was a legitimate reason for termination); *Joiner v. Wal-Mart Stores, Inc.*, 114 F. Supp. 2d 400, 411 (W.D.N.C. 2000) (same). Summary judgment, therefore, is granted in the BOE's favor.

To save his claim, Malry contends that the School's restriction on his speaking Spanish

14

generates a plausible inference of discriminatory animus. Not so. Accepting as true that Riddick scolded Malry for speaking Spanish, Malry has generated no evidence that this incident factored into the BOE's reasons for taking any adverse action against him. Indeed, the principal's response—that the School "value[s] bilingual employees" and that he was "rescinding" any directive to the contrary—belies that this issue influenced Malry's discipline or dismissal. Accordingly, even if a genuine dispute exists about whether Malry was told not to speak Spanish, no evidence shows that it played any role in Malry's reprimands or termination. *See Chang Lim v. Azar*, 310 F. Supp. 3d 588, 602–03 (D. Md. 2018). Summary judgment in favor of the BOE on the Title VII disparate treatment claim (Count II) is proper.

### 2. ADEA

Malry's ADEA claim also does not survive challenge. The ADEA prohibits unlawful age discrimination, offering protection to employees over the age of 40. 29 U.S.C. §§ 631(a); 623(a)(1). To sustain an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) (rejecting "mixed-motives" age discrimination claims, in contrast to Title VII discrimination claims). "An employer's reliance on factors that are analytically distinct from age in reaching the adverse decision rules out age as its but-for cause." *Bennett v. Kaiser Permanente*, 931 F. Supp. 2d 697, 705 (D. Md. 2013).

Malry contends that his ADEA claim reaches the jury because the School principal and Riddick suggested Malry should retire soon, and because Johnson received better treatment than Malry. However, as already discussed, no evidence demonstrates that the BOE's discipline and termination was on account of Malry's age. The evidence, viewed most favorably to Malry,

instead demonstrates that the BOE disciplined him for repeated misconduct and fired him for ignoring remedial directives. *See Tavernier v. Health Mgmt. Assocs., Inc.*, 498 F. App'x 349, 351 (4th Cir. 2012) ("[T]he record evidence permits only the conclusion that [plaintiff's] supervisor actually believed—even if erroneously—that [plaintiff] was a poor performer.") Nor has Malry marshaled any evidence that the BOE treated Johnson differently on account of his age. *See Ullrich v. CEXEC, Inc.*, 709 F. App'x 750, 754 (4th Cir. 2017). Summary judgment must be entered in the BOE's favor for Count I.

### B.    Hostile Work Environment

Malry's hostile work environment claims under Title VII and the ADEA are also premised on the repeated disciplinary measures taken against him and the budget issues involving Johnson.[7] To prove a hostile work environment claim, Malry must demonstrate "that: (1) he experienced unwelcome harassment; (2) the harassment was based on his race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Baqir*, 434 F.3d at 745–46. This claim suffers from the same fatal flaw as Malry's discrimination claims. No evidence demonstrates that the adverse conduct of which Malry complains—repeated discipline, less favorable treatment as compared to Johnson, and termination—was motivated by discriminatory animus. Summary judgment must be entered in the BOE's favor on the hostile work environment claims (Counts IV and V).

### C.    Retaliation

Malry finally contends that the BOE's adverse employment actions constitute unlawful

---

[7] This circuit has only "assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty or older." *Baqir v. Principi*, 434 F.3d 733, 746 n.14 (4th Cir. 2006).

retaliation under Title VII for complaining to the EEOC. Race retaliation claims are governed by the same burden-shifting framework as discriminatory treatment claims. *See Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018). If a plaintiff establishes a *prima facie* retaliation claim, the burden then shifts to the defendant "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.* at 328 (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). A *prima facie* case of retaliation requires Malry to show that: (1) he engaged in protected activity, (2) the BOE took an adverse action against him, and (3) a causal link exists between the two. *Id.* at 327; *Rhoads v. FDIC*, 257 F.3d 373, 391–92 (4th Cir. 2001).

Malry maintains that his February 2009 EEOC charge and complaints to human resources were met with "hostility" and "unwarranted discipline." ECF No. 1 ¶ 55. Although Malry's activity is indeed "protected," he has generated no evidence that the BOE's discipline was causally connected to such activity. The unrebutted evidence demonstrates that Malry was consistently and persistently disciplined for misconduct over many years. Indeed, the timing of the BOE's adverse action undermines rather than support Malry's retaliation claim. Malry was initially disciplined before he filed his 2009 EEOC complaint and was terminated a full year after his last complaint to OHR in January 2013.[8] Accordingly, no reasonable trier of fact could conclude that the BOE disciplined Malry in retaliation for his complaints. *See Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) (holding that nine-month gap between complaint and termination was a "significant lapse of time" that "does not support an inference of discrimination"). Rather, the evidence, viewed most

---

[8] Plaintiff's affidavit alleges that he "contacted the MCPS Human Resources Office repeatedly throughout 2013." ECF No. 24-1 ¶ 37. Naked assertions of "contact" with OHR, however, are insufficient to demonstrate that Malry had engaged in legally cognizable "protected activity." *See Stennis v. Bowie State Univ.*, 716 F. App'x 164, 166–67 (4th Cir. 2017).

favorably to Malry, demonstrates that the BOE disciplined him for serious and unremitting misconduct. Summary judgment is granted in the BOE's favor for Count III.

**IV. Conclusion**

For the foregoing reasons, the BOE's motion for summary judgment is granted. ECF No. 15. A separate Order follows.

December 11, 2018                                /S/
Date                                                        Paula Xinis
                                                                                 United States District Judge